# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RONALD JEROME BEAL,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>SERGEANT RUSSELL SCHNEIDER,<br>　　　　　　　　　　Defendant. | Case No. 14-CV-229-JPS<br><br><br><br>**ORDER** |

## 1.　INTRODUCTION

On October 3, 2016, the defendant Sergeant Russell Schneider ("Schneider") filed a motion for summary judgment as to all of the plaintiff Ronald Jerome Beal's ("Beal") claims. (Docket #53). Beal's response to the motion was due on or before November 2, 2016. *See* Civil L. R. 56(b)(2). On November 10, 2016, having not received such a response, the Court ordered Beal to submit one within seven days. (Docket #58). On November 16, 2016, Beal submitted a nine-page brief in opposition to Schneider's motion and seventy-one pages of exhibits, which included an appellate brief, various medical documents, and documents relating to Beal's internal complaint about Schneider's alleged misconduct. (Brief, Docket #59; Exhibits, Docket #59-1). Beal did not offer a response to Schneider's statement of facts or his own additional statement of facts.

Beal has been informed of the requirements of the federal and local rules regarding summary judgment at least twice: by attachments to the Court's trial scheduling order, and by Schneider's own summary judgment motion. (Docket #39 and #53). He has chosen to ignore these rules by failing to file anything which could be construed as a response to Schneider's

statement of facts which would comply with Local Rule 56(b)(2)(B). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer; the Court cannot and will not determine which facts Beal should dispute, and what evidence should support those disputes. The Seventh Circuit explained the problem in *Smith*:

> A district court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). In short, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Smith's summary-judgment materials were woefully deficient in either responding adequately to the defendants' statement or in setting forth additional facts with appropriate citations to the record. As such, Smith's purportedly good intentions aside, the district court did not abuse its discretion in deeming admitted and only considering the defendants' statement of material facts.

*Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Like *Smith*, no matter Beal's intentions, his utter failure to comply with the rules of procedure means that the Court has no choice but to find that Schneider's facts are undisputed for purposes of deciding the motion.

## 2. RELEVANT FACTS[1]

At all times relevant, Beal was a prisoner at the Kettle Moraine Correctional Facility, and Schneider was a correctional officer at that

---

[1] In accordance with the Court's above-discussed ruling, these facts are taken solely from Schneider's statement of facts except where otherwise noted.

institution. On April 30 2013, Schneider was working in Beal's housing unit during lunchtime. Hot dogs were being served that day. Juan Rodriquez ("Rodriquez"), Beal's fellow inmate, asked Schneider if he was going to finish eating his lunch. Schneider said yes and then stated "if you took Beal's hot dog and put it in your mouth, he's not gonna be happy." *See* (Docket #56 at ¶ 5). Though Beal immediately laughed, Schneider recognized the comment's sexual overtones. Schneider did not intend to convey any sexual implication and apologized to Rodriquez. Another inmate, Brian Anthony ("Anthony"), was not part of the conversation and Schneider felt he was too far away to hear what was said.

Rodriquez nevertheless filed a complaint about Schneider's comment; Beal did not. Rodriquez identified Beal as a witness to the comment. As part of the prison's investigation of Rodriquez's complaint, Beal was interviewed later that same day. Beal answered various questions of the investigators, including the following:

Question: Did [Schneider] say something bizarre today?

Answer (by Beal): I'm gonna be honest. Rodriguez asked for another tray and Sgt. Point at me at [sic] stated "Put his weenie in your mouth and you'll smile." I was sitting there waiting for another glass of water.

. . .

Q: What's your opinion of that comment?

A: Sgt. Schneider is one of the best Sgt.'s we have, He just like to talk to people. He shouldn't have said that outta his mouth.

. . .

Q: How did you take it?

A: It was wrong. But I didn't tell him that.

> . . .
>
> Q: What did you think weenie meant?
>
> A: I was thinking hotdogs cause that's what we ate.
>
> Q: Did you think he was talking about hotdogs or private parts[?]
>
> A: I think he was talking about hotdogs. I like Sgt. Schneider.
>
> . . .
>
> Q: Do you think he was talking about the hotdog or your penis?
>
> A: Honestly I think he was talking about private parts.

(Docket #57-1 at 10-11). The investigators found that Rodriquez's complaint was substantiated, namely that Schneider made an inappropriate comment, he had apologized to Rodriquez, and that "it appears more likely than not that [Beal] was sexually harassed by Sergeant Schneider's statement." *Id.* at 6.

During a timeframe not clearly defined, but apparently prior to the April 30 comment, Schneider worked as the sole officer in Beal's housing unit. When Schneider would go to the restroom to urinate, he would leave the door open so that he could monitor inmate activity and see the security camera monitors at his station. He did so only for security purposes and not to sexually harass any inmate. Beal never saw Schneider's penis during these instances. (Docket #57-1 at 19-20).

3.    **ANALYSIS**

Beal was permitted to proceed on a claim of sexual harassment, in violation of the Eighth Amendment. The first two grounds for this claim are: 1) the April 30, 2013, comment, and 2) urinating in the restroom with the door open. (Docket #42 at 4-5). Schneider has moved for summary judgment as to those grounds. (Docket #54 at 2). The amended complaint, however,

states a third ground for the claim: Schneider telling Beal and other inmates to shower without underwear on, and looking in the shower while they used it. (Docket #42 at 5). The Court will address the third ground separately below.

To state a claim for a violation of constitutional rights pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Schneider does not dispute that he acted under the color of state law.

He does, however, dispute that he sexually harassed Beal. The law governing that claim is discussed in the Seventh Circuit's prior opinion in this matter, *Beal v. Foster*, 803 F.3d 356 (7th Cir. 2015). *Beal* held that "simple or complex, most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Id.* at 358. It defined "simple" harassment as that which "is 'fleeting,' too limited to have an impact." *Id.* Because it controls the disposition of this motion, the Court quotes *Beal*'s assessment of the facts at length:

> [C]onsider the allegations in this case that defendant Schneider "made verbal sexual comments directed towards inmate Brian Anthony, telling Ronald Beal to place his penis inside Brian Anthony," and that "on several prior occasions" Schneider had urinated in view of the plaintiff (by leaving the bathroom door open) and of other inmates, looking at them "while smiling." These are the only allegations of the complaint, but one can imagine how they might have been amplified had the magistrate judge not terminated the suit so

abruptly. The plaintiff attempted in his appeal brief to amplify the first allegation, stating that what Schneider had said to another inmate—presumably Anthony—in the presence of the plaintiff and other inmates was that if the plaintiff would "put his Weiner [penis]" in the other inmate's mouth the inmate would smile.

The remarks attributed by the plaintiff to Schneider, including the "smile" references and the display of Schneider's own penis in his repeated public urinations . . . could have been understood by the inmates as implying that the plaintiff is homosexual. The fact that Schneider is a Sergeant may have amplified the impact of his remarks.

In his appellate filings the plaintiff further claims that other inmates would harass him by calling him names such as "punk, fag, sissy, and queer," all of course derisive terms for homosexuals and possibly inspired or encouraged by Schneider's comments—and we note in this connection that the complaint charges the two defendants (realistically, though, just Schneider, not the warden) with sexual harassment. Conceivably the plaintiff feared that Sergeant Schneider's comments labeled him a homosexual and by doing so increased the likelihood of sexual assaults on him by other inmates.

The plaintiff claims to have experienced severe psychological harm as a result of the incidents described in his complaint—psychological harm that induced him to seek "psych service" help repeatedly from the prison's Clinical Services division. He has filed records of these visits and also proof that he filed a grievance with the prison concerning Schneider's comments and that on May 24, 2013, the prison upheld the grievance. Though it has been more than two years since that ruling, the plaintiff states without contradiction that he's been unable to learn what findings emerged from the grievance proceeding and whether any punishment was imposed on Schneider for his misconduct. Those findings might either strengthen or weaken his case. The magistrate judge should have ordered the defendants to produce them.

And [the Magistrate Judge] erred in saying that "the plaintiff alleges only verbal harassment." Urinating isn't verbal. We can imagine, as suggested in the preceding paragraph, that

> the plaintiff was seriously upset by Schneider's nonverbal as well as verbal behavior, which may have made him a pariah to his fellow inmates and inflicted significant psychological harm on him.

*Id.* at 358-59 (citation omitted).

Of critical importance is the standard for assessing claims of Eighth Amendment violative "cruel and unusual" punishment, of which this is a derivation. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). The test is not merely subjective, but also includes an objective component. *Fillmore v. Page*, 358 F.3d 496, 509 (7th Cir. 2004). *Fillmore* explained that "'[t]he objective component focuses on whether, in light of contemporary standards of decency, the alleged deprivation was sufficiently serious. The subjective component involves an inquiry into whether the officials acted with a sufficiently culpable state of mind.'" *Id.* (quoting *Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir. 1994). Similarly, in evaluating a plaintiff's claim that he feared a guard would attack him, *Dobbey* noted that "the test for what constitutes 'cruel and unusual punishment' is an objective one. It is not the actual fear of the victim, but what a 'reasonable' victim would fear." *Dobbey v. Illinois Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). Further, the actor must have intended to "inflict psychological pain." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

### 3.1 The April 30, 2013 Comment and Urination Incidents

Recall the grounds for Beal's claim: 1) the April 30, 2013 "hot dog" comment, 2) the unspecified number of urination incidents, and 3) the unspecified number of showering incidents. In Beal's case, the first two grounds fail to support a claim of sexual harassment because they do not pass

the objective test; on the undisputed facts, no reasonable person would have felt constitutionally impermissible harassment as a result of Schneider's conduct. The Court of Appeals evaluated the conduct as a whole, combining the April 30 comment and the instances of urination into one contiguous claim of harassment, and so will this Court. Unlike the allegations presented to the Court of Appeals, the facts show that Schneider did not smile at anyone while using the bathroom, and kept the door open only because he had to maintain order in the housing unit, not to display his penis to the inmates. With respect to the April 30 comment, Schneider never actually referenced a penis, but instead said "hot dog," and certainly never said that any inmate should put their penis inside any other inmate.

Even assuming the worst—that a fully-fledged sexual innuendo was intended by Schneider and received by Rodriquez and Beal—Schneider's comment still falls below the level of "cruel and unusual" punishment. It was an isolated instance of inappropriate bathroom humor, resulting from Schneider's poor judgment, for which he immediately apologized. This conduct does not approach the seriousness of hanging a noose in view of black inmates, which the *Dobbey* court rejected as a mere harassment, or the hypotheticals advanced by the *Beal* court involving lying to a prisoner about having brain cancer or about the prisoner's family being killed in a car crash.

*Dobbey*, 574 F.3d at 446; *Beal* 803 F.3d at 357.[2] In sum, while Schneider's actions may have been "unprofessional and deplorable," they were "fleeting" and thus unable to support a reasonable jury finding on the objective component of a sexual harassment claim. *See DeWalt*, 224 F.3d at 612; *Beal*, 803 F.3d at 358.[3]

Beal's reaction to Schneider's conduct supports this conclusion. When interviewed as part of the Rodriquez investigation, Beal was far from upset with Schneider. Beal said he liked Schneider and that Schneider had simply made a mistake in making the comment. Beal was interviewed again on May

---

[2]The complete hypotheticals are as follows:

> The proposition that verbal harassment cannot amount to cruel and unusual punishment is incorrect. Suppose a prisoner is having severe headaches and he complains about them to a prison doctor, who writes him a prescription for a powerful drug. A malicious guard learns of this and tells the prisoner the following lie: "the doctor didn't tell you, but he told me: you have incurable brain cancer and will be dead in three months. Now let me tell you what he told me are the symptoms you will be experiencing as your cancer worsens." Or the guard, again lying, tells another prisoner: "I am sorry to have to inform you that your wife and children have been killed in a car crash." The harassment in both cases is purely verbal, yet as cruel (and, one hopes, as unusual) as in cases of physical brutalization of prisoners by guards. To attempt to draw a categorical distinction between verbal and physical harassment is arbitrary. In short, "the alleged pain [sufficient to constitute cruel punishment] may be physical or psychological." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (emphasis added).

*Beal*, 803 F.3d 357.

[3]Though the Court of Appeals did not have occasion to pass on the issue, the factual record now shows that Schneider can also defeat the intent component. He states that he never intended to harass anyone with his conduct, and this is supported by his immediate apology. (Docket #55 ¶¶ 11-12, 17-19, 36-37).

8, 2013, confirming most of what he had said previously, but now stating that the comment bothered him. (Docket #57-1 at 16). That was the extent of Beal's complaint, though; he never said that he felt sexually harassed by Schneider, only that Schneider "shouldn't have said that comment." *Id.* If Beal himself felt no desire to complain of harassment when given the opportunity to do so immediately after the incidents in question, Beal cannot claim that a reasonable jury would disagree with him.[4]

Beal's arguments to the contrary do not save these grounds from dismissal. First, he contends that the investigator's finding of harassment, and Schneider's violation of prison policies on sexual comments, proves his claim. However, the claim is for "cruel and unusual" punishment, not violation of a policy or harassment per internal prison guidelines, and so must be based on the Eighth Amendment and interpreting case law. *See* Seventh Circuit Pattern Jury Instruction 7.04 (instructing that the violation of an internal rule or regulation is not determinative of the ultimate, constitution-based claim); *see also Doe by Nelson v. Milwaukee Cnty.*, 903 F.2d 499, 502 (7th Cir. 1990). That law, cited above, shows that no constitutionally impermissible

---

[4]The Court of Appeals stated that Beal "filed a grievance with the prison concerning Schneider's comments and that on May 24, 2013, the prison upheld the grievance." *Beal*, 803 F.3d at 359. This seems to be based on the May 24, 2013 letter Beal received from the investigators. (Docket #57-1 at 39). The investigation, however, was for *Rodriquez's* complaint, not Beal's. (Docket #57 at ¶¶ 5-8) (showing that investigation report number 1147 was Rodriquez's complaint). The letter states that Beal "made an allegation of staff sexual harassment which prompted an internal PREA investigation." (Docket #57-1 at 39). It is not clear why the investigators sent the letter to Beal; perhaps they did so because he was a key actor in the underlying events. It is also not clear what "allegation" they are referring to, but it may be based on Beal's interview quoted above. In any event, no one has presented evidence of an independent grievance filed by Beal.

harassment occurred. Second, in arguing about the urination incidents, Beal states nothing about Schneider's urination being specifically directed at him or anything about alleged smiling, but instead that the conduct was "unprofessional" and "disrespectful." (Docket #59 at 5). This argument hurts, rather than helps, his position. Being subjected to lack of professionalism is not "cruel and unusual." *See DeWalt*, 224 F.3d at 612. Third, Beal attempts at various points in his brief to dispute the facts of the April 30 incident, but as noted above, this wholly ignores the rules of procedure. Finally, Beal complains of the results of Schneider's conduct. The Court sympathizes with Beal's plight but it cannot reach the results of a harassing event without first finding actionable harassment. Accordingly, the Court is constrained to dismiss these first two grounds for Beal's Eighth Amendment sexual harassment claim.

### 3.2 Inmate Showering

On May 13, 2016, Beal submitted an amended complaint stating the three grounds for his sexual harassment claim identified above. (Docket #42 at 4-5). On June 1, 2016, the Court screened that complaint, stating that it was "nearly identical to his previous complaint," and that it "does not include any new factual allegations that materially alter the Court's analysis in the previous screening order." (Docket #45 at 3). The original complaint only stated the first two grounds, however, and those were all that was identified in the previous screening order issued by Magistrate Judge Aaron E. Goodstein. *See* (Docket #16 and #17). This Court's screening order nevertheless allowed Beal to proceed generally on a claim of sexual harassment, without explicitly tying the claim to the first two grounds. (Docket #45 at 4).

It appears, then, that Beal was allowed to proceed on the showering issue. However, Schneider did not recognize this in the instant motion. (Docket #54 at 2). Beal himself made no mention of it in his brief, though he referenced it as part of the April 30 comment investigation. *See* (Docket #59 and #57-1 at 16-17). The Court cannot grant summary judgment or otherwise dispose of the showering ground without such relief being requested by Schneider and affording Beal an opportunity to oppose that request. *See Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996). This is not a claim that was simply abandoned in the face of Schneider's argument against it. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).

To remedy this oversight, the Court will, contemporaneously with this order, issue an amended, abbreviated trial scheduling order, to resolve the showering issue on an expedited basis. The Court further notes for the parties' benefit that no dates or deadlines of the amended trial scheduling order will be extended absent a clear showing of exceptional circumstances.

### 3.3     Appointment of Counsel

Finally, the Court addresses Beal's outstanding motion for appointment of counsel. (Docket #61). Under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The Court should seek counsel to represent a plaintiff if the plaintiff: (1) has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)).

The Court will deny the plaintiff's motion under the second prong of the *Pruitt* test. This case is not complex; the only issue remaining is what Schneider did in relation to inmate showering practices, and whether that constituted "cruel and unusual" harassment. Save for ignoring the procedural requirements related to Schneider's motion as discussed above, Beal appears more than capable of filing motions and pleadings as he deems appropriate. (Docket #42, #50, #52, and #59). Beal has not demonstrated that the case exceeds his capacity to present it, and as such, the Court concludes that recruitment of counsel is not necessary at this time. Beal's motion to appoint counsel will be denied without prejudice.

3. **CONCLUSION**

On the undisputed facts before the Court, no reasonable jury could conclude that Schneider's April 30, 2013 comment or the urination instances, or both together, rose to the level of "cruel and unusual" harassment. The Court must, therefore, dismiss those as grounds for Beal's Eighth Amendment harassment claim. The Court will allow Beal to proceed on the showering grounds as discussed above, so the claim itself will not be dismissed.

Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (Docket #53) be and the same is hereby **GRANTED in part** and **DENIED in part**;

**IT IS FURTHER ORDERED** that the plaintiff is no longer permitted to proceed on his Eighth Amendment claim for sexual harassment on the bases of: 1) the defendant's allegedly sexual comment of April 30, 2013, or 2)

the defendant's practice of urinating in a bathroom near the plaintiff with the door open; and

**IT IS FURTHER ORDERED** that the plaintiff's motion for appointment of counsel (Docket #61) be and the same is hereby **DENIED without prejudice**.

Dated at Milwaukee, Wisconsin, this 20th day of January 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge